# EXHIBIT 3

EXHIBIT 3

**WRITTEN CONSENT**
**OF THE SOLE MEMBER OF**
**THRILL HOLDINGS LLC**

September 23, 2025

The undersigned, being the sole member (the "Sole Member") of Thrill Holdings LLC, a Delaware limited liability company (the "Company"), hereby takes the following actions and adopts the following resolutions by written consent, in lieu of a meeting of members of the Company pursuant to the Delaware Limited Liability Company Act (the "Act"), and directs that this written consent ("Written Consent") be filed with the minutes and proceedings of the members of the Company.

WHEREAS, in connection with that certain Credit Agreement, dated as of May 27, 2022 (as amended, restated, amended and restated, supplemented, modified, extended, increased, replaced, refinanced or otherwise modified from time to time, the "Credit Agreement"), made by and among (i) the Company, (ii) Thrill Intermediate LLC, a Delaware limited liability company, (iii) the Guarantors (as defined therein) party thereto, (iv) the lenders party thereto (the "Lenders"), (v) U.S. Bank Trust Company, National Association, as administrative agent (in such capacity, the "Administrative Agent"), the Sole Member, the Company, and the other Pledgors (as defined in the Pledge Agreement) made that certain Pledge Agreement, dated as of May 27, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Pledge Agreement"), in favor of the Administrative Agent for the benefit of the Secured Parties (as defined in the Credit Agreement);

WHEREAS, under the Pledge Agreement, the Sole Member pledged to the Administrative Agent, among other things, security interests in 100% of the issued and outstanding membership interests of the Company (the "Equity Interests") and appointed the Administrative Agent as its attorney-in-fact with respect to the transactions contemplated by the Credit Agreement and the Pledge Agreement, as well as, among other things, following the occurrence and/or during the continuance of an Event of Default (as defined in the Credit Agreement), granted its proxy to exercise its voting and other consensual rights with respect to the Equity Interests from time to time in accordance with the terms and subject to the limitations in the Pledge Agreement;

WHEREAS, Events of Default are continuing under the Credit Agreement and the Administrative Agent gave notice to the Sole Member and the Company on the date hereof that the Administrative Agent was exercising its rights and remedies under the Pledge Agreement, including the voting and other consensual rights with respect to the Equity Interests; and

WHEREAS, on the date hereof, under and pursuant to the Credit Agreement and the Pledge Agreement, the Administrative Agent has, without taking possession of or acquiring legal title to any of the Equity Interests, exercised the proxy and power of attorney pertaining to the Equity Interests to execute this written consent to, among other things (i) amend and restate the Company's limited liability company agreement, (ii) remove every existing member of the board of managers of the Company (the "Board", and each member thereof, a "Manager") and (iii) elect a new member of the Board, and written notice of the foregoing is being delivered to the Sole Member and the Company concurrently herewith.

**Amended and Restated Limited Liability Company Agreement**

NOW, THEREFORE, BE IT RESOLVED, that the limited liability company agreement of the Company be, and hereby is, amended and restated as set forth in Exhibit A hereto (the "A&R LLCA");

**Removal of Managers; Engagement, Appointment and Authority of Independent Manager**

RESOLVED, that each existing Manager is hereby removed from the Board;

RESOLVED, that Steven Strom (the "Independent Manager") is hereby elected and appointed to serve as the Company's sole Manager;

RESOLVED, that the form, terms and provisions of the Independent Director Offer Letter, dated as of the date hereof, by and between the Company and the Independent Manager, and the transactions contemplated by the Manager Agreement, be and hereby are authorized, adopted and approved, and the Independent Manager be and hereby is authorized and directed to execute the Manager Agreement on behalf of the Company;

RESOLVED, that effective upon the election and appointment of the Independent Manager to serve as a Manager, the Independent Manager is hereby authorized to execute and deliver any other documents on behalf of the Company and each of its direct and indirect subsidiaries;

**Indemnification of Managers**

RESOLVED, that (i) the Company shall indemnify the Independent Manager and any other Managers who become duly elected Managers after the effectiveness of these resolutions (collectively, the "New Managers") to the maximum extent permitted by applicable law against any and all losses, claims, damages, liabilities, obligations, judgments or expenses and other costs arising out of or in connection with their service; and (ii) such indemnification may be provided pursuant to and in accordance with a written indemnification agreement to be entered into between the Company and new Manager;

RESOLVED, that the Company shall maintain directors' and officers' liability (or similar) insurance policies in full force and effect, and such policies shall provide coverage for all New Managers duly appointed, subject to the terms and conditions of such policies; provided that the Company shall promptly deliver to each New Manager a certificate of insurance or broker confirmation evidencing such coverage;

RESOLVED, that in no event shall the Administrative Agent or the Lenders be responsible for any fees, compensation, losses, claims, damages, liabilities, penalties, obligations, expenses, or other reimbursement or indemnity of any Manager; provided that nothing in this resolution shall limit or impair (i) the obligations of the Company to indemnify and hold harmless the New Managers to the maximum extent permitted by applicable law; (ii) the rights of any New Manager to reimbursement or advancement of expenses from the Company; or (iii) the availability of or proceeds of any directors' and officers' liability insurance maintained by the Company.

**Authority of Officers**

RESOLVED, that, to the maximum extent permitted by the Act and the A&R LLCA, and notwithstanding any prior authorization by the Board or the Sole Member to the contrary, no officer, employee or agent of the Company, may, without the advance written consent of the New Managers, which consent shall be dated on or after the date hereof: (i) authorize or take any act as, for, by, or on behalf of the Company that is outside the ordinary course of business for the Company; (ii) cause any payment to be made or execute on behalf of the Company any contract, purchase order, or other instrument, in each case which obligates the Company to make any payment in excess of $50,000; (iii) execute on behalf of the Company any power of attorney, bond, mortgage or other similar instrument; (iv) enter into, terminate or modify the engagement of any accounting firm, auditing firm, investment banking firm, law firm, or other

third-party professional services firm on behalf of the Company; (v) commence, initiate, assign, settle or compromise any legal proceeding or investigation; (vi) make any prepayment to any vendor or supplier of the Company; (vii) grant any severance, change of control, retention, termination or similar compensation or benefits to, or increase the compensation or benefits of, or award or pay any bonus, other incentive compensation or any equity or equity-linked compensation to, any person; (viii) file any case, action or proceeding before any court or governmental authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or other relief of debtors or make any general assignment for the benefit of creditors, composition, marshaling of assets for creditors, or other similar arrangement in respect of its creditors generally or any substantial portion of its creditors under U.S. federal, state or foreign law, including, without limitation, the United States Bankruptcy Code; or (ix) take or authorize any of the foregoing with respect to any subsidiary of the Company (the actions described in clauses (i) through (ix) above, "Specified Actions"); and any prior authorization of the Sole Member or the Board authorizing or instructing any officer, employee or agent of the Company to take any Specified Action is hereby rescinded and revoked;

**Registration of Agent as Sole Party Entitled to Vote Membership Interests**

RESOLVED, that the Company is directed to register on the books and records of the Company that the Administrative Agent, in its capacity as agent, proxy and/or attorney-in-fact, is the sole party entitled to exercise voting, corporate, consensual and other rights, powers and privileges in respect of the membership interests of the Company and any other equity interests of the Company;

**Notice Authorization**

RESOLVED, that the Independent Manager is hereby authorized to send a letter to each of the Company's and its subsidiaries' law firms, investment bankers and other advisors substantially in the form attached hereto as Exhibit B, pursuant to which the Company notifies such advisor of the change in authorized representative for the Company, with any changes that the Independent Managers deems appropriate;

**Actions by Officers and Managers**

RESOLVED, that each individual New Manager and each officer of the Company is hereby authorized, empowered, and directed to take such actions or cause to be done all such further acts and things and to take or cause to be taken any and all such further actions and make, execute and deliver or cause to be made, executed and delivered any and all such documents, agreements, instruments, certificates, filings with governmental agencies and undertakings as any such person may deem to be necessary, advisable or appropriate in order to carry out the purpose or intent of the foregoing resolutions;

**Filing and Certification of Consent**

RESOLVED, that each individual New Manager and each officer of the Company is hereby (i) directed to file this Written Consent with the records of the meetings of the members of the Company, (ii) authorized and empowered to certify a copy of this Written Consent to such person or persons as such officer deems entitled thereto, and (iii) instructed to provide the Company's officers with notice of the actions that are the subject of this Written Consent.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the undersigned has executed this Written Consent effective as of the date first written above.

**SOLE MEMBER**

**THRILL INTERMEDIATE LLC**

By: U.S. Bank Trust Company, National Association (acting as attorney-in-fact under the Pledge Agreement and by proxy)

By: Alexandra Rhyne
Name: Alexandra Rhyne
Title: Vice President

**Exhibit A**

**Amended and Restated LLCA**

*Attached*

AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT
OF
THRILL HOLDINGS LLC

THIS AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") is made and entered into by the undersigned sole member (the "Member") of Thrill Holdings LLC, a Delaware limited liability company (the "Company"), is effective as of September 23, 2025.

WHEREAS, the Company was formed as a limited liability company on April 1, 2022, when the Company's Certificate of Formation was filed with the Secretary of State of the State of Delaware in accordance with the Delaware Limited Liability Company Act (DEL. CODE ANN. tit. 6, § 18-101 et seq.), as amended from time to time (the "Act") and the Company and the Member entered into the Company's initial Limited Liability Company Agreement (the "Previous Agreement").

WHEREAS, under Section 16 of the Previous Agreement, the Previous Agreement may be amended by the Member.

WHEREAS, the Member desires to amend and restate the Previous Agreement in its entirety as set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Previous Agreement is hereby amended and restated in its entirety as follows:

1. Formation.

1.1 The Company was formed on April 1, 2022 by Kirk D. Homeyer (the "Organizer"), acting in the capacity of an "authorized person" under §18-201 of the Act, executing the initial certificate of formation of the Company and filing it with the Secretary of State of the State of Delaware. The Member acknowledged, authorized and ratified the Organizer's taking that action to form the Company under the Act.

1.2 The Member and each Manager is hereby designated as an authorized person, within the meaning of the Act and otherwise, to execute, deliver and file any amendments and/or restatements to the certificate of formation of the Company and any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in a jurisdiction in which the Company may wish to conduct business.

1.3 To the full extent permitted by the Act, this Agreement shall control as to any conflict between this Agreement and the Act or as to any matter provided for in this Agreement that is also provided for in the Act.

2. Purpose. The Company is formed for the purpose of engaging, and the nature of the business to be conducted and promoted by the Company is to engage, in any lawful act or activity for which a limited liability company may be formed under the Act.

3. Powers of the Company.

3.1 The Company shall have the power and authority to take all actions necessary, appropriate, advisable, convenient or incidental to or for the furtherance of the purpose set forth in Section 2.

3.2 All real and personal property of the Company shall be owned by the Company as an entity. The Member shall not have any interest in any specific property of the Company. The interest of the Member in the Company is personal property.

4. Member. The following information with respect to the Member is to be provided on Schedule 1 and will be accurate as of the date hereof (except to the extent updated as provided below):

4.1 the name and address of the Member; and

4.2 the capital contribution of the Member to the Company.

The Board may, but shall not be required to, update the information on Schedule 1 from time to time to reflect any changes in that information.

5. Management.

5.1 *Board of Managers.*

(i) Other than as specifically set forth herein, the business and affairs of the Company will be managed exclusively by a board of managers (the "Board", and each member thereof, a "Manager"). The number of Managers shall initially be one, or such other number as may be designated from time to time by resolution of a majority of the Board or by the Member. The Managers need not be Members. The Board has the power to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein to the furthest extent permitted under the laws of the State of Delaware. Other than as specifically set forth herein, the Board is solely responsible for all aspects of the operation of the Company and shall have the authority to bind the Company by its signature or by the signature of any person authorized to act on its behalf. Each Manager shall hold office until such Manager's earlier death, resignation, disqualification, or removal. Any Manager may be removed, with or without cause, at any time by the Member. Vacancies and newly created Manager positions, whether resulting from an increase in the size of the Board or due to the death, resignation, disqualification, or removal of a Manager or otherwise, may be filled by the Member. Except as otherwise provided in the Act, no Manager of the Company shall be obligated personally for any debt, obligation or liability of the Company or of any Member, whether arising in contract, tort or otherwise, solely by reason of being a Manager. Notwithstanding anything to the contrary herein, the Member has full power and authority to approve, and execute on behalf of the Company, any engagement letter or indemnification agreement with respect to any Manager.

(ii) The Board may delegate to other persons or entities, including to officers of the Company appointed by the Board, so much of the Board's responsibilities hereunder and authority to act on behalf of the Company as the Board determines in its sole discretion to be necessary, appropriate or convenient for the efficient administration and management of the Company's business and affairs. Any person or entity may have titles that the Board may elect, including the titles of President, Vice President, Treasurer, Secretary and Assistant Secretary, and the power and authority to act on behalf of the Company as the Board may delegate in writing to any such person or entity. The salaries or other compensation, if any, of the officers and agents, if any, of the Company shall be fixed from time to time by

the Board. Except as otherwise provided by the Board, when the taking of action has been authorized by the Board, any Manager or officer of the Company, or any other person specifically authorized by the Board, may execute any contract or other agreement or document on behalf of the Company.

(iii) Except as otherwise expressly delegated by the Board or to the extent that the Company's registered agent has the authority to accept legal process or otherwise act on behalf of the Company as provided in the Act, no person or entity other than the Board shall be an agent of the Company or have any right, power or authority to transact any business in the name of the Company or to act for or on behalf of or to bind the Company.

5.2 *Reliance by Third Parties*. The Member or any officer of the Company may certify and authenticate records of the Company to third parties. Any third party dealing with the Company, the Member or any officer of the Company may rely upon a certificate signed by the Member or any officer of the Company as to:

(i) the identity of the Member or any officer of the Company;

(ii) the existence or non-existence of any fact or facts that constitute a condition precedent to acts by the Member or any officer of the Company or are in any other manner germane to the affairs of the Company;

(iii) the persons who or entities that are authorized to execute and deliver any instrument or document of or on behalf of the Company; or

(iv) any act or failure to act by the Company or as to any other matter whatsoever involving the Company, the Member or any officer of the Company.

5.3 *Records and Information*. The Board shall maintain all of the books and records of the Company referenced in §18-305 of the Act, to the extent applicable to the Company, except to the extent that the responsibility to maintain any books and records is delegated to an officer of the Company.

5.4 *Waiver of Fiduciary Duties; Liability*. No Manager or Member shall have any duty (fiduciary or otherwise) to any Member, the Company or its subsidiaries with respect to the business and affairs of the Company except as specifically set forth in this Agreement or as required by law, and no Manager or Member shall be liable to the Company or any Member for acting in good faith reliance upon the provisions of this Agreement. No Manager shall be personally liable to the Company or to the Members for acting in good faith reliance upon the provisions of this Agreement, or for breach of any duty that does not involve (i) acts or omissions in bad faith or which involve gross negligence, intentional misconduct, fraud or a knowing violation of law, or (ii) a transaction from which the Manager derived an improper personal benefit. The failure of the Company to observe any formalities not expressly required by the terms of this Agreement relating to the exercise of its powers or the management of its business or affairs under this Agreement or the Act shall not be grounds for making the Managers responsible for any liability of the Company.

6. Term; Dissolution.

6.1 The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with this Section 6.

6.2 The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (a) the written consent of the Member; or (b) the entry of a decree of judicial dissolution under §18-802 of the Act.

6.3 Neither the death, incompetency, nor bankruptcy of the Member will cause the dissolution of the Company. If the Company has no Members because of the death, incompetency, bankruptcy or withdrawal of the sole Member, the legal representative or successor of the Member may exercise all of the powers of an assignee or transferee of a Member, and if there are no Members, may admit one or more assignees as Members.

6.4 Upon the dissolution of the Company, the Member shall wind up the Company's affairs as provided in the Act. Upon the winding up of the Company's affairs, the Member shall distribute the property of the Company as follows:

(i) First, to creditors, including the Member if the Member is a creditor, to the extent permitted by law, in satisfaction of the Company's liabilities (whether by payment or the making of reasonable provision for payment thereof); and

(ii) Second, to the Member in cash or property, or partly in cash and partly in property, as determined by the Member.

6.5 Upon the completion of the winding up of the Company, the Member shall file a certificate of cancellation with the Secretary of State of the State of Delaware canceling the Company's certificate of formation, at which time the Company shall terminate.

7. Additional Contributions; Member Loans.

7.1 The Member may, but is not required to, make additional capital contributions to the Company.

7.2 The Member may, but is not required to, make loans to the Company. If and to the extent that loans are made by the Member to the Company, those loans shall be on terms determined by the Member to be commercially reasonable. In the absence of any separate determination made by the Member, all loans made by the Member to the Company shall be payable upon demand and shall bear interest at 5% per year.

7.3 To the extent that additional funds are made available by the Member to the Company, those funds shall be treated as loans made by the Member to the Company, and not as additional capital contributions made by the Member to the Company, unless specifically designated as additional capital contributions made by the Member to the Company.

8. Liability of Member. The Member shall not have any liability for the obligations or liabilities of the Company except to the extent provided in the Act.

9. Tax Status. At all times that the Company has only one member (who owns 100% of the limited liability company interests in the Company), it is the intention of the Member that the Company be disregarded as an entity separate and apart from the Member for federal, and, to the extent applicable, state, local and foreign, income tax purposes. All items of Company profit, loss, income, gain, deduction and credit shall, for federal income tax purposes, be attributed to the Member.

10. Distributions.

10.1 Distributions shall be made to the Member at the times and in the amounts determined by the Board, except that no distribution shall be made in violation of the Act.

10.2 Unless otherwise determined by the Board, no distribution shall be paid to the Member upon the Member's resignation in connection with the voluntary assignment of the Member's entire limited liability company interest in the Company pursuant to Section 11. Unless otherwise determined by the Board, no distribution will be paid to the Member upon the occurrence of an event that causes the Member to cease to be a member of the Company if the Company is continued without dissolution in accordance with Section 6.

11. Assignments.

11.1 The Member may transfer or assign (including as a pledge or other collateral assignment) in whole or in part the Member's limited liability company interest.

11.2 In connection with a voluntary transfer or assignment by the Member of the Member's entire limited liability company interest in the Company (not including a pledge or collateral assignment or any transfer as a result thereof):

(i) the Member will cease to be a member of the Company;

(ii) the assignee will automatically and simultaneously be admitted as the successor Member without any further action at the time the voluntary transfer or assignment becomes effective under applicable law; and

(iii) the Company shall be continued without dissolution.

11.3 Notwithstanding Section 11.2, any successor to the Member may not adopt amendments to this Agreement that adversely affect the interests of any prior Member without the consent of such person.

11.4 In connection with a partial assignment or transfer by the Member of the Member's limited liability company interest in the Company (not including a pledge or collateral assignment or any transfer as a result thereof), unless this Agreement is amended to reflect the fact that the Company will have more than one member, the assignee or transferee shall not be admitted as a member of the Company and shall not have any rights as a member other than the right to receive any distributions that are payable in respect of the interest transferred.

11.5 Upon any pledge or other collateral assignment by the Member of all or any part of the Member's limited liability company interest in the Company, the pledgee or collateral assignee shall have only those rights expressly stated in the controlling pledge or assignment agreement (including any right in connection with the foreclosure of the pledge or collateral assignment of the purchaser of the limited liability company interest to become a member of the Company) or are provided by other applicable law. If the pledgee or collateral assignee of all or any part of the Member's limited liability company interest in the Company has the right under the controlling pledge or assignment agreement or under other applicable law to purchase such interest in foreclosure (or to cause or permit another person to purchase such interest in foreclosure), except as expressly stated in the

controlling pledge or assignment agreement, the purchaser shall not be admitted as a member of the Company and shall not have any rights as a member other than the right to receive any distributions that are payable in respect of the interest foreclosed upon and purchased.

11.6 A charging order entered against the Member's limited liability company interest in the Company does not constitute a transfer. No holder of a charging order may foreclose on or otherwise acquire the Member's limited liability company interest in the Company so charged. This provision may not be amended except with the written consent of the Member.

11.7 The Member may transfer its, his or her limited liability company interest by will, by laws of descent and distribution and *inter vivos*. The Member may designate, in writing (the "Member Designation"), one or more persons to receive the Member's limited liability company interest in the Company upon the Member's death. The Member Designation shall be fully revocable by the Member and may be changed by subsequent writings from time-to-time, in the sole discretion of the Member. Any person so designated shall be subject to all the terms of this Agreement and shall receive the Member's limited liability company interest in the Company subject to any purchase option, buy-sell agreement or other agreement potentially affecting such interest. Such person shall be admitted as a Member automatically upon the person accepting this Agreement in writing, without any further action of the Manager.

12. Resignation. The Member may resign from the Company at such time as the Member shall determine. Neither the filing of a voluntary petition in bankruptcy nor any other event specified in §18-304 of the Act will cause the Member to cease to be a member of the Company.

13. Admission of Additional Members. One or more additional members of the Company may be admitted to the Company with the written consent of the Board in each instance. In connection with the admission of any additional member of the Company (including an admission in connection with a partial assignment or transfer pursuant to Section 11.4, but excluding an admission provided for in any pledge or collateral assignment agreement pursuant to Section 11.5), this Agreement shall be amended by the Board to make those changes the Board determines to reflect the fact that the Company will have more than one member, but the failure to so amend this Agreement shall not invalidate any otherwise valid assignment or transfer made by the Member.

14. Exculpation and Indemnification.

14.1 *Exculpation.*

(i) For purposes of this Agreement, "Covered Persons" means each Manager, the Member, any Affiliate of the Member and any officer, director, shareholder, partner or employee of the Member and the Affiliates of the Member, and any officer, employee or expressly authorized agent of the Company or its Affiliates. For purposes of this Agreement, "Affiliate" means, with respect to any person, each other person that directly, or indirectly through one or more intermediaries, owns, controls is controlled by or is under common control with such person and includes, without limitation, any owner, director, limited liability company manager or general partner of a person. For purposes of this definition, "control" means the possession, direct or indirect, of the power to direct or cause the

direction of the management and policies of such person, whether through the ownership of voting securities, by contract or otherwise.

(ii) The Member, whether acting in the Member's capacity as Member, or in any other capacity, shall not be liable to the Company for any loss, damage or claim incurred by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted by the Member in good faith, and no other Covered Person shall be liable to the Company or the Member for any loss, damage or claim incurred by reason of any act or omission (whether or not constituting negligence) performed or omitted by the Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on the Covered Person by this Agreement, except that a Covered Person (other than the Member, irrespective of the capacity in which the Member acts) shall be liable for any loss, damage or claim incurred by reason of the Covered Person's gross negligence and a Covered Person (including the Member) shall be liable for any loss, damage or claim incurred by reason of the Covered Person's willful misconduct.

(iii) A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon the information, opinions, reports or statements presented to the Company by any person or entity as to matters the Covered Person reasonably believes are within the professional or expert competence of that person or entity, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, profits, losses or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid. The foregoing provision shall in no way be deemed to reduce the limitation on liability of the Member provided in Section 14.1(ii).

14.2 *Duties and Liabilities of Covered Persons.*

(i) To the extent that, at law or in equity, a Covered Person has duties (including fiduciary duties) and liabilities relating thereto to the Company or to the Member, a Covered Person acting under this Agreement shall not be liable to the Company or to the Member for its good faith reliance on the provisions of this Agreement. The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person otherwise existing at law or in equity, are agreed by the Member to replace any other duties and liabilities of the Covered Person.

(ii) All provisions of this Section 14 shall apply to any former Member of the Company for all actions or omissions taken while that person was the Member of the Company to the same extent as if that person were still the Member of the Company.

14.3 *Indemnification.* To the fullest extent permitted by applicable law, the Member (irrespective of the capacity in which the Member acts) shall be entitled to indemnification from the Company for any loss, damage or claim incurred by the Member by reason of any act or omission (whether or not constituting negligence or gross negligence) performed or omitted, and any other Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by that Covered Person by reason of any act or omission (whether or not constituting negligence) performed or omitted by that

Covered Person in good faith and in a manner reasonably believed to be within the scope of authority conferred on that Covered Person by this Agreement, except that no Covered Person (other than the Member, irrespective of the capacity in which the Member acts) shall be entitled to be indemnified in respect of any loss, damage or claim incurred by that Covered Person by reason of gross negligence and no Covered Person (including the Member) shall be entitled to be indemnified in respect of any loss, damage or claims incurred by that Covered Person by reason of willful misconduct with respect to those acts or omissions; provided, however, that any indemnity under this Section 14 shall be provided out of and to the extent of Company assets only, and no Covered Person shall have any personal liability on account thereof.

14.4 *Expenses*. To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person in defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company before the final disposition of the claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay that amount if it shall be determined that the Covered Person is not entitled to be indemnified under this Section 14.

14.5 *Indemnity Contracts*. The Member and the Company may enter into indemnity contracts with any Covered Person and adopt written procedures pursuant to which arrangements are made for the advancement of expenses and the funding of obligations under this Section 14 and containing other procedures regarding indemnification as are appropriate.

14.6 *Insurance*. The Company may purchase and maintain insurance, to the extent and in amounts the Member shall, in the Member's sole discretion, deem reasonable, on behalf of Covered Persons and other persons or entities as the Member shall determine, against any liability that may be asserted against or expenses that may be incurred by that person or entity in connection with the activities of the Company, regardless of whether the Company would have the power to indemnify that person or entity against that liability under this Agreement.

15. Outside Business. The Member, Managers and any Affiliates thereof may engage in or possess an interest in any business venture of any nature or description, independently or with others, similar or dissimilar to, and competitive or not competitive with, the business of the Company. The Company and the Member shall have no rights by virtue of this Agreement in and to business ventures or the income or profits derived therefrom. The pursuit of any business venture, even if competitive with the business of the Company, shall not be deemed wrongful or improper. The Member or any Affiliate thereof shall not be obligated to disclose or present any particular opportunity to the Company even if that opportunity is of a character that, if disclosed or presented to the Company, could be taken by the Company. The Member or Affiliate thereof shall have the right to take for its own account (individually or as a partner, shareholder, fiduciary or otherwise), or to recommend to others, any particular opportunity.

16. Amendment. This Agreement may be amended or modified only by a written instrument signed by the Member.

17. Governing Law. This Agreement shall be governed by, and construed under, the laws of the State of Delaware, without regard to the rules of conflict of laws thereof or of any other jurisdiction that would call for the application of the substantive laws of a jurisdiction other than the State of Delaware.

18. Termination of Agreement. This Agreement shall terminate and be of no further force or effect upon the filing of a certificate of cancellation cancelling the Company's certificate of formation pursuant to Section 6.5 of this Agreement; but Sections 14.1, 14.2, 14.3 and 14.4 shall survive termination.

19. Effective Date. Pursuant to §18-201(d) of the Act, this Agreement shall be effective as of the date hereof.

20. No Third-Party Beneficiaries. Except as contemplated by Section 14, nothing in this Agreement, express or implied, is intended to confer upon any person or entity, other than the party hereto and its respective successors and permitted assigns, any benefits, rights or remedies.

21. Miscellaneous. Throughout this Agreement, nouns, pronouns and verbs shall be construed as masculine, feminine, neuter, singular or plural, whichever shall be applicable. All references to "Sections" and "Clauses" shall refer to corresponding provisions of this Agreement. The use of the term "including" or any similar term shall be deemed to mean "including, without limitation." Any reference in this Agreement to any law, rule or regulation shall be construed as reference to the law, rule or regulation as it may have been, or may from time to time be, amended, revised or reenacted and any successor thereto. The headings of sections in this Agreement are intended for reference purposes only and shall be given no substantive meaning or any interpretive force. This Agreement may be executed and delivered in any number of counterparts (including by electronic means such as facsimile, email and/or .pdf), each of which when so executed and delivered will be deemed an original, but all such counterparts together will constitute one and the same instrument.

[*Signature Page Follows*]

IN WITNESS WHEREOF, the undersigned has duly executed this Amended and Restated Limited Liability Company Agreement as of the day and year first aforesaid.

MEMBER:

**THRILL INTERMEDIATE LLC**

By: U.S. Bank Trust Company, National Association (acting as attorney-in-fact under the Pledge Agreement and by proxy)

By: Alexandra Rhyne
Name: Alexandra Rhyne
Title: Vice President

**Schedule 1**

| Name | Address | Agreed Value of Capital Contribution |
|---|---|---|
| Thrill Intermediate LLC | 10801 W. Charleston Blvd., Suite 600 Las Vegas, Nevada 89135 | $100 |

# **Exhibit B**

## Notice to Legal Advisors

**THRILL HOLDINGS LLC**

September [●], 2025

[●]
Attention: [●]
Email: [●]

Re: Change of Authorized Representative

Ladies and Gentlemen:

You are hereby advised that, as of the date hereof, each of (i) Thrill Holdings LLC, a Delaware limited liability company, (ii) Nitrocross IP Holdings LLC, a Delaware limited liability company, (iii) Nitro Rallycross LLC, a Delaware limited liability company, (iv) Superjacket Productions LLC, a Delaware limited liability company, (v) Purple Shark, LLC, a California limited liability company, (vi) Perfect Feet Productions, LLC, a Delaware limited liability company, (vii) Crown Media Entertainment, LLC, a Delaware limited liability company, and (viii) Conduit Post, LLC, a Delaware limited liability company (collectively, the "Companies") has revoked all previously granted authority of any officer, director, manager, member, employee, or other agent (each, a "Company Party") to provide direction with respect to any and all legal matters handled by your firm.

From the date of receipt of this correspondence, Steven Strom is the only Company Party authorized to give direction with respect to any and all legal matters handled by your firm on behalf of any Company. No other person is authorized. Accordingly, please direct all future correspondence and notices to any Company to:

Steven Strom
Odinbrook Global Advisors LLC
191University Blvd #934
Denver, CO 80206
Steven@Odinbrook.com

Please contact Steven Strom at 203-918-4500 with any questions with respect to the foregoing.

Very truly yours,

THRILL HOLDINGS LLC

By:______________________________________
Name: Steven Strom, Authorized Person