GARMAN TURNER GORDON LLP
GREGORY E. GARMAN, ESQ.
Nevada Bar No. 6654
E-mail: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549
E-mail: wnoall@gtg.legal
TERESA M. PILATOWICZ
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
DYLAN T. CICILIANO
Nevada Bar No. 12348
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Counsel for Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THRILL INTERMEDIATE LLC ☒<br><br>THRILL HOLDINGS LLC ☒<br><br>SUPERJACKET PRODUCTIONS LLC ☒<br><br>PURPLE SHARK, LLC ☒<br><br>PERFECT FEET PRODUCTIONS, LLC ☒<br><br>CROWN MEDIA ENTERTAINMENT, LLC ☒<br><br>CONDUIT POST, LLC ☒<br><br>NITROCROSS IP HOLDINGS LLC ☐<br><br>NITRO RALLYCROSS LLC ☐<br><br>AFFECTS ALL DEBTORS ☐<br><br>Debtors. | Lead Case No.: 25-15714-MKN<br>Chapter 11<br>*Jointly administered with:*<br><br>Thrill Holdings LLC<br>Case No. 25-15715-mkn<br><br>Superjacket Productions LLC<br>Case No. 25-15716-mkn<br><br>Purple Shark, LLC<br>Case No. 25-15717-mkn<br><br>Perfect Feet Productions, LLC<br>Case No. 25-15718-mkn<br><br>Crown Media Entertainment, LLC<br>Case No. 25-15719-mkn<br><br>Conduit Post, LLC<br>Case No. 25-15720-mkn<br><br>Nitrocross IP Holdings LLC<br>Case No. 25-15721-mkn<br><br>Nitro Rallycross LLC<br>Case No. 25-15722-mkn<br><br>Adv. No. 25-01215-mkn |
| THRILL INTERMEDIATE LLC, a Delaware | |



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

limited liability company, THRILL HOLDINGS LLC, a Delaware limited liability company, SUPERJACKET PRODUCTIONS LLC, a Delaware limited liability company, PURPLE SHARK, LLC, a California limited liability company, PERFECT FEET PRODUCTIONS, LLC a Delaware limited liability company, CROWN MEDIA ENTERTAINMENT, a Delaware limited liability company, and CONDUIT POST, LLC, a Delaware limited liability company,

Plaintiffs

v.

U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, as Administrative Agent, PGIM, Inc., a New Jersey corporation, as Lead Lender Representative, PGIM NON-US INVESTORS / US SENIOR DEBT I FUND, PGIM NON-US INVESTORS / US SENIOR DEBT I FUND A, PGIM SENIOR LOAN OPPORTUNITIES (LEVERED) I, L.P., PGIM SENIOR LOAN OPPORTUNITIES MANAGEMENT FUND I, L.P., PRUCO LIFE INSURANCE COMPANY, PSLO I US INVESTORS LEVERED DEBT SPV LLC, BAYERNINVEST KAPITALVERWALTUNGSGESELLSCHAFT MBH on behalf of fund BayernInvest SDF 2-Fonds, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, WINDHILL CLO 1, LTD., CION INVESTMENT CORPORATION, 34TH STREET FUNDING LLC, MGG US DIRECT LENDING FUND 2019 LP, MGG SF EVERGREEN LP, MGG SF DRAWDOWN UNLEVERED MASTER FUND III (CAYMAN) LP, MGG SF DRAWDOWN UNLEVERED OFFSHORE III SPV S.A.R.L., MGG SF EVERGREEN MASTER FUND (CAYMAN) LP, MGG SF EVERGREEN UNLEVERED MASTER FUND II (CAYMAN) LP,

Defendants.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## FIRST AMENDED COMPLAINT

Plaintiffs,[1] by and through their undersigned attorneys, alleges, based upon knowledge, information, and belief, as follows:

## I.
## NATURE OF THE ACTION

1. Defendants, who are lenders (or lenders' agents) to Plaintiffs, attempted to wrongfully take control of Plaintiffs and certain of their affiliates (who are debtors in the Chapter 11 Cases (defined below)) by delivering a patently defective notice. The intentional and egregious conduct was inconsistent with the express contractual terms negotiated between the parties, was done in violation of applicable law, and was done in violation of the covenants of good faith and fair dealing which are imposed both statutorily under Article 9 and implied at law in all contracts. Specifically, the parties negotiated that any action by the lenders (and their agents) to enforce their rights must follow notice to Plaintiffs (a requirement that is further required by the Uniform Commercial Code and is not waivable). In this instance, notice was required to be delivered to Borrower c/o Fuime Capital, 10801 W. Charleston Boulevard, Las Vegas, Nevada, Attn: David Hirschfeld, Chief Investment Officer, with copies provided to additional parties. On the morning of Rosh Hashanah, Defendants attempted to deliver the advance "Notice" of their intent to act, but only after the underlying action had been completed. For the many reasons set forth herein, providing "Notice" after the fact is ineffective or has otherwise been undone by the filing of the bankruptcy cases and subsequent corporate action by the Debtors.

## II.
## THE PARTIES

2. Plaintiff Intermediate is a Delaware limited liability company with its principal

---

[1] The Plaintiffs in this Adversary Proceeding are: Thrill Intermediate LLC ("Intermediate"); Thrill Holdings LLC ("Holdings"), a debtor in Case No. 25-15715-mkn; Superjacket Productions LLC ("Superjacket"), a debtor in Case No. 25-15716-mkn; Purple Shark, LLC ("Purple Shark"), a debtor in Case No. 25-15717-mkn; Perfect Feet Productions, LLC ("Perfect Feet"), a debtor in Case No. 25-15718-mkn; Crown Media Entertainment, LLC ("Crown"), a debtor in Case No. 25-15719-mkn ; Conduit Post, LLC ("Conduit"), a debtor in Case No. 25-15720-mkn. Plaintiffs collectively with non-plaintiff affiliate debtors Nitrocross IP Holdings LLC, a Delaware limited liability Company ("Nitrocross IP"), Case No. 25-15721-mkn, and Nitro Rallycross LLC, a Delaware limited liability Company ("Rallycross"), Case No. 25-15722-mkn, are referred to herein as the "Debtors".



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

place of business in Clark County, Nevada.

3. Plaintiff Holdings is a Delaware limited liability company with its principal place of business in Clark County, Nevada.

4. Plaintiff Superjacket is a Delaware limited liability company with its principal place of business in Clark County, Nevada.

5. Plaintiff Perfect Feet is a Delaware limited liability company with its principal place of business in Clark County, Nevada.

6. Plaintiff Purple Shark is a California limited liability company with its principal place of business in Clark County, Nevada.

7. Plaintiff Crown is a Delaware limited liability company with its principal place of business in Clark County, Nevada.

8. Plaintiff Rallycross is a Delaware limited liability company with its principal place of business in Clark County, Nevada.

9. Intermediate owns 100% of Holdings' membership interests. Holdings owns 100% of Superjacket's membership interests and non-plaintiffs Nitrocross IP and Rallycross. Superjacket owns 100% of Purple Shark, Perfect Feet, Crown, and Conduit's membership interests.

10. Defendant U.S. Bank Trust Company, National Association (the "***Administrative Agent***"), is a national banking association with multiple offices in Nevada and who caused the harm and damage to Plaintiffs averred to herein.

11. Defendant PGIM, Inc., a New Jersey corporation, as Lead Lender Representative under the Credit Agreement (defined below).

12. Defendant PGIM NON-US INVESTORS / US SENIOR DEBT I FUND is a lender under the Credit Agreement (defined below).

13. Defendant PGIM NON-US INVESTORS / US SENIOR DEBT I FUND A is a lender under the Credit Agreement (defined below).

14. Defendant PGIM SENIOR LOAN OPPORTUNITIES (LEVERED) I, L.P. is a

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

lender under the Credit Agreement (defined below).

15. Defendant PGIM SENIOR LOAN OPPORTUNITIES MANAGEMENT FUND I, L.P. is a lender under the Credit Agreement (defined below).

16. Defendant PRUCO LIFE INSURANCE COMPANY is a lender under the Credit Agreement (defined below).

17. Defendant PSLO I US INVESTORS LEVERED DEBT SPV LLC is a lender under the Credit Agreement (defined below).

18. Defendant BAYERNINVEST KAPITALVERWALTUNGSGESELLSCHAFT MBH on behalf of fund BayernInvest SDF 2-Fonds is a lender under the Credit Agreement (defined below).

19. Defendant THE PRUDENTIAL INSURANCE COMPANY OF AMERICA is a lender under the Credit Agreement (defined below).

20. Defendant WINDHILL CLO 1, LTD. is a lender under the Credit Agreement (defined below).

21. Defendant CION INVESTMENT CORPORATION is a lender under the Credit Agreement (defined below).

22. Defendant 34TH STREET FUNDING LLC is a lender under the Credit Agreement (defined below).

23. Defendant MGG US DIRECT LENDING FUND 2019 LP is a lender under the Credit Agreement (defined below).

24. Defendant MGG SF EVERGREEN LP is a lender under the Credit Agreement (defined below).

25. Defendant MGG SF DRAWDOWN UNLEVERED is a lender under the Credit Agreement (defined below).

26. Defendant MASTER FUND III (CAYMAN) LP is a lender under the Credit Agreement (defined below).

27. Defendant MGG SF DRAWDOWN UNLEVERED is a lender under the Credit

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Agreement (defined below).

28. Defendant OFFSHORE III SPV S.A.R.L. is a lender under the Credit Agreement (defined below).

29. Defendant MGG SF EVERGREEN MASTER FUND (CAYMAN) LP is a lender under the Credit Agreement (defined below).

30. Defendant MGG SF EVERGREEN UNLEVERED MASTER FUND II (CAYMAN) LP is a lender under the Credit Agreement (defined below).

31. Each of the foregoing Defendants are referred to collectively herein as the "Defendants."

## III.
## JURISDICTION AND VENUE

32. On September 28 and 29, 2025, Debtors filed petitions for relief under chapter 11, title 11, United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Chapter 11 Cases").

33. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the order of reference set forth in Local Rule 1001(b)(1).

34. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), including 28 U.S.C. § 157(b)(2), (A), (C), (E), (G), (K), and (O).

35. This adversary proceeding arises in the Chapter 11 Cases pending in the District of Nevada.

36. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the Chapter 11 Cases are pending before the above-captioned bankruptcy court.

37. Plaintiffs consent to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## IV.
## FACTUAL BACKGROUND

### A. Plaintiffs' Principal Business Is the Production of Ridiculousness.

38. Plaintiffs' principal business is the production of the series "Ridiculousness" (the

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

"Series") for New Remote Productions, Inc. ("MTV").

39. The Series is a comedy clip show hosted by Rob Dyrdek, which is distributed on MTV and Paramount Plus, where Mr. Dyrdek and co-hosts present and comment on viral videos—stunts, pratfalls, and everyday chaos—all played on a giant video wall before a live audience.

40. The Series, with over 1,000 episodes, has had a culturally significant impact, mainstreaming meme/internet humor on cable TV and streaming platforms for years.

41. Rob Dyrdek is Ridiculousness' celebrity host and executive producer, and Matthew Cabral is Superjacket's Chief Operating Officer and responsible for overseeing production. MTV, Mr. Dyrdek, Mr. Cabral, and Plaintiffs' relationships are governed by a series of complex agreements both entered into and amended over the course of the last 16 years.

**B. The Senior Lenders Underwrote Their Loan to Plaintiffs Based Primarily on the Value of Ridiculousness.**

42. On May 27, 2022, Holdings, as the borrower, and Intermediate, Conduit, Crown, Perfect Feet, and Purple Shark, among others, as guarantors, entered into a Credit Agreement (the "Credit Agreement") dated as of May 27, 2022, with U.S. Trust Company, N.A., as administrative agent, and PGIM, Inc., as lead lender representative and sole bookrunner, and Prudential Investment Management Services, LLC, as lead arranger, for various lenders who are Defendants in this action (such lenders, the "Senior Lenders").

43. The Senior Lenders underwrote their loan ("Loan") memorialized by the Credit Agreement and certain other "Credit Documents" as defined in the Credit Agreement based on the agreements now at issue between Plaintiffs and MTV, Mr. Dyrdek, Mr. Cabral.

44. Concurrently with the Credit Agreement, the same parties entered into the Security Agreement dated May 27, 2022 ("Security Agreement") and a Pledge Agreement dated May 27, 2022 (the "Pledge"), granting security interests in certain collateral owned by the Debtors.

45. By means of subsequent transactions and amendments to the Credit Agreement, Superjacket and non-plaintiffs Nitrocross IP and Rallycross became guarantors under the Credit Agreement.

**C. Plaintiffs' Proactive Steps Beginning in Q2 2025 to Ensure Value Is Preserved.**

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

46. Intermediate and Holdings ultimately determined it was prudent to retain a chief restructuring officer and financial advisor to assist them in evaluating opportunities to maximize value.

47. The Debtors engaged Garman Turner Gordon LLP ("GTG") to provide advice to help the Debtors navigate the challenges they faced and to lead the legal efforts to preserve and maximize the value of their assets.

**D. The Administrative Agent's July 3, 2025, Reservation Letter Did Not Exercise Any Proxy Rights.**

48. On July 3, 2025, the Senior Lenders delivered a "Reservation of Rights in respect of Current Default" letter to Holdings and Intermediate identifying two alleged events of default that had occurred under the Credit Agreement, specifically that the June 30, 2025, principal installment due on the Loan and the June 30, 2025, interest payment due on the Loan were not paid, which constituted defaults under the Credit Agreement (the "July 3 Reservation Letter").

49. The July 3 Reservation Letter did not mention either the Pledge or voting rights nor did the letter give any notice of the Administrative Agent's intention to exercise voting rights. It stated only generally that "Administrative Agent and Lenders may in their sole discretion exercise various rights, powers and remedies available to them under the Credit Agreement, the other Credit Documents and under applicable law" and that Administrative Agent and Lenders are presently evaluating all available courses of action relating to the Current Defaults.

**E. Debtors' Additional Steps to Ensure the Borrower and Guarantors' Value Is Preserved.**

50. The July 3 Reservation Letter confirmed that the parties were engaged in discussions regarding the debt.

51. In July 2025, Intermediate and its subsidiaries retained Force Ten Partners LLC ("Force 10") to provide Jeremy Rosenthal, as a Chief Restructuring Officer ("CRO"), with financial advisor services to aid Mr. Rosenthal's services as CRO.

52. In August 2025, Intermediate, Holdings, and Superjacket retained the law firm of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard"), as entertainment counsel. Sheppard has



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

expeditiously analyzed the agreements involving Plaintiffs (and Rallycross and Nitrocross IP), and MTV, and talent and the implications of contractual provisions.

53. To help the various parties in interest, including Senior Lenders, understand the financial and legal implications of the "pay-or-play" notice and chart a value-maximizing path forward, the CRO, along with Plaintiffs' professionals from GTG and Sheppard, had numerous meetings with the principals and advisors for Senior Lenders, mezzanine lenders, and equity holders.

54. As part of those discussions, each of these groups were provided with projections, a data room with relevant documents, and the terms of the underlying agreements with the Senior Lenders and their counsel.

55. In the days leading up to the Senior Lenders' hostile failed takeover attempt described below, Debtors' counsel conveyed to the Senior Lenders that Debtors' equity holders were preparing a proposed settlement offer for the Senior Lenders.

56. Advisors to Estremo LLC ("Sponsor")[2] also conveyed the same message to the Senior Lenders' counsel.

**F. The Defendants' Failed Takeover Attempt Was Intentionally Designed to Deprive Debtors of Their Legal and Contractual Notice Rights.**

57. Notwithstanding the grave consequences that could result from the Administrative Agent and Senior Lenders' actions, the Senior Lenders undertook a scheme to effectuate a hostile takeover of the Debtors in the middle of Rosh Hashanah, which scheme was designed to deny Debtors their contractual and statutory notice rights.

58. On September 23, 2025, in the middle of Rosh Hashanah, which in 2025 began September 22, 2025, at sundown, and ended at nightfall on September 24, 2025, the Administrative Agent and Senior Lenders' attempted to effectuate their hostile takeover.

59. In fact, a Direction to the Administrative Agent by the Senior Lenders (the "Direction Letter") required delivery of the proxy documents on September 23, 2025, "at or

[2] Estremo LLC is a significant equity holder of Thrill Partners LLC, which wholly owns Intermediate.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

around, or as promptly thereafter as reasonably possible, 1:00 ET on the date hereof[,]" (being September 23, 2025).

60. Rosh Hashanah is a significant Jewish holiday, and along with Yom Kippur, are generally referred to as the High Holy Days. It is customary for Jewish people to attend synagogue on the High Holy Days, and observant Jewish people do not work on those days. In 2025 Yom Kippur began the afternoon of October 1, 2025, and ended at nightfall on October 2, 2025.

61. Senior Lenders were aware that the Debtors' notice party under the Credit Agreement and Pledge, David Hirschfeld, and Debtors' CRO (with whom Senior Lenders had been engaging), are of Jewish heritage.

62. The Credit Agreement and the Pledge contain specific notice provisions designed to ensure Debtors received sufficient notice in advance of any adverse action by Senior Lenders.

63. Section 10.01 of the Credit Agreement is titled "Notices" and provides very specific, and non-standard, requirements for how written notice must be provided to Borrower, stating:

> Except in the case of notices and other communications expressly permitted to be given by telephone (and subject to paragraph (b) below), all notices and other communication provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent to a valid e-mail address, as follows:
>
> (i) if to the Borrower c/o Fiume Capital, 10801 W. Charleston Boulevard, Las Vegas, Nevada, Attention: **David Hirschfeld, Chief Investment Officer, Email: dhirschfeld@fiumecapital.com**; with a copy (which shall not constitute notice or delivery) to: Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attention: Antonio Diaz-Albertini, Email: ADiaz-Albertini@milbank.com;
>
> ***
>
> Notices sent by hand or overnight courier service, or mailed by certified or registered mail, shall be deemed to have been given when received; **notices sent by e-mail shall be deemed to have been received upon receipt by the sender of confirmatory return e-mail or other written acknowledgment from the intended recipient (provided that use of the "return receipt requested" function shall not be sufficient)**; provided that if such e-mail is not given during normal business hours of the recipient, such notice or other communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient. Notices delivered through electronic communications, to the extent provided in paragraph (b) below, shall be effective as provided in said paragraph (b).



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

(Emphasis added.)

64. Section 7.5 of the Pledge is even narrower. While Section 7.5 refers to Section 10.01 of the Credit Agreement for notice addresses it excludes service by email, stating:

> All notices and other communications provided for hereunder shall be in writing and addressed and delivered to (i) the Pledgors care of the Borrower at its address set forth in Section 10.01 of the Credit Agreement, and (ii) to the Administrative Agent at its address set forth in Section 10.01 of the Credit Agreement. Any notice, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received.

65. Section 4.2 of the Pledge addresses Voting Rights, requiring two conditions precedent to the Administrative Agent exercising any voting rights under the Pledge: (1) that an Event of Default has occurred and is continuing, and (2) that the Administrative Agent has provided notice to the pledgor of its intention to exercise its voting power under the Pledge prior to exercising its voting rights.

66. Section 4.2 of the Pledge states in pertinent part:

> 4.2 Voting Rights. If an Event of Default shall have occurred and be continuing and the Administrative Agent shall have notified the applicable Pledgor of the Administrative Agent's intention to exercise its voting power under this Section 4.2, such notified Pledgor agrees:
>
> that the Administrative Agent may exercise (to the exclusion of such Pledgor) the voting power and all other incidental rights of ownership with respect to the Pledged Collateral pledged by such Pledgor, and such Pledgor hereby grants the Administrative Agent, from the date hereof until the complete, full and final repayment of the Secured Obligations (other than contingent indemnification obligations for which no claim has been asserted) and the termination of the Revolving Commitments under the Credit Agreement, an irrevocable (until the termination of this Agreement) proxy, coupled with an interest exercisable under such circumstances, to vote such Pledged Collateral; and promptly to deliver to the Administrative Agent such additional proxies and other documents as may be necessary to allow the Administrative Agent to exercise such voting power.
>
> All payments and proceeds which may at any time and from time to time be held by any of the Pledgors, but which such Pledgor is then obligated to deliver to the Administrative Agent on behalf of itself and the Secured Parties, shall be held by such Pledgor separate and apart from its other property in trust for the Administrative Agent and the other Secured Parties. Unless an Event of Default shall have occurred and be continuing and the Administrative Agent shall have given the notice referred to in this Section 4.2, the Pledgors shall have the exclusive voting power with respect to the Pledged Collateral and the Administrative Agent shall, upon the written request of any Pledgor, promptly deliver such proxies and other documents,

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

> if any, as shall be reasonably requested by such Pledgor which are necessary to allow such Pledgor to exercise voting power with respect to the Pledged Collateral; provided, however, that no vote shall be cast, or consent, waiver or ratification given or action taken by any Pledgor that would materially impair any Pledged Collateral or be materially inconsistent with or violate any provision of the Credit Agreement or any other Credit Document without the prior written consent of the Administrative Agent and the Required Lenders.

(Emphasis added.)

67. The Direction Letter is revealing. The Direction Letter is dated September 23, 2025, and issued to U.S. Bank, N.A., as Administrative Agent under the Credit Agreement, by PGIM, Inc., the Lead Lender Representative, and is signed by each of the "Directing Lenders."

68. The Direction Letter instructs the Administrative Agent to accomplish all of the following tasks on September 23, 2025: (i) to "execute" a pre-prepared Notice of Exercise; (ii) "to exercise" its voting rights under the Pledge "by…executing" three documents which were already prepared and attached to the Direction Letter as Exhibits A, B, and C, namely (A) Notice of Exercise, (B) Member Consent of the Borrower, and (C) Amended and Restated Limited Liability Company Agreement of the Borrower; and, "delivering" all of the documents by courier to Borrower's physical addresses as close as possible to 1:00 ET that same day.

69. The Direction Letter refers to all three documents as one collective group—the "Exercise of Rights Documents"—and reiterated the direction to the Administrative Agent "to cause Proskauer to deliver the Exercise of Rights Documents." Id.

70. The Direction Letter further invited the Administrative Agent to advise the Senior Lenders if the Administrative Agent had any concerns with the Direction Letter and permitted the Administrative Agent to decline to follow any direction that it determined to be in violation of the Credit Documents, which by definition included the Pledge.

71. The foregoing was set forth in one single direction as follows:

> Direction. Each Directing Lender hereby represents, severally and not jointly, for the benefit of the Administrative Agent, that it is a Lender as of the date hereof and that the Directing Lenders constitute all of the Lenders as of the date hereof. As a result of the occurrence and continuation of the Specified Events of Default, the Administrative Agent, for its own behalf and on behalf of the other Secured Parties, is hereby authorized and directed by the Directing Lenders **(I) to execute the Notice of Exercise of Remedies**



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

> attached hereto as <u>Exhibit A</u> **and (II) to exercise the voting, consent, corporate, partnership, limited liability company and other rights** to which it is entitled under the Credit Documents with respect to each Pledgor under the Pledge Agreement as proxy and attorney-in-fact of such Pledgors, as set forth in Section 4.2 of the Pledge Agreement to, among other things, appoint Steven Strom as the sole member of the board of managers of the Borrower, **by (a) executing the Notice of Exercise of Proxy Remedies, attached hereto as <u>Exhibit A</u>, (b) executing the Member Consent of the Borrower, attached hereto as <u>Exhibit B</u>, (c) executing the Amended and Restated Limited Liability Company Agreement of the Borrower, attached hereto as <u>Exhibit C</u>, and (d) and delivering (or causing Proskauer to deliver) each of the foregoing documents by courier to the physical addresses and by email to the email addresses set forth on Schedule I at or around, or as promptly thereafter as reasonably possible, 1:00 ET on the date hereof (the foregoing, collectively, the "Initial Directions"). Exhibits A through C shall be referred to herein as the "Exercise of Rights Documents")**. The Directing Lenders further direct and instruct the Administrative Agent to follow such additional written directions, including by email or other electronic directions, in connection with this letter and the Specified Events of Default as may be given at any time and from time to time by the Directing Lenders or the Directing Lenders' counsel, Proskauer Rose LLP ("Proskauer"), without the Administrative Agent's need to verify Proskauer's authority to provide such additional instructions on behalf of the undersigned Directing Lenders, and/or to file, execute, or otherwise enter into any other agreement or document that may be delivered to the Administrative Agent by the Directing Lenders or Proskauer as such Lenders' counsel (the "Additional Directions" and together with the Initial Directions, collectively, the "Directions"). **Each of the Directing Lenders consent and direct the Administrative Agent to cause Proskauer to deliver the <u>Exercise of Rights Documents</u>** and any other notices or documents related to additional Directions. To the extent the Administrative Agent reasonably determines that any of the Directions requires any clarification or supplementation, or additional direction, the Administrative Agent shall be entitled to promptly advise Proskauer or the Directing Lenders of such circumstances and the Directing Lenders shall promptly provide to the Administrative Agent one or more additional directions or instructions to so clarify or supplement such Direction (each of which additional directions or instructions shall constitute and be a part of the "Directions" as such term is defined above and used herein). Until such time as the Administrative Agent receives such additional directions or instructions, the Administrative Agent shall be under no duty to take, or refrain from taking, any course of action for which the Administrative Agent has requested additional direction or instruction. **Nothing herein shall require the Administrative Agent to accept or follow any Direction that it determines, in its reasonable judgment, to be in violation of or contrary to the terms of Credit Documents or its duties thereunder, or applicable law.**

(Emphasis added.)

72. The Direction Letter also included **unsigned** copies of each of the following documents: (i) the Notice of Election of Remedies dated September 23, 2025; (ii) the Written

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Consent of the Sole Member of Thrill Holdings LLC dated September 23, 2025; (iii) the draft Thrill Holdings LLC letter professing to make Steven Strom the sole "Company Party" authorized to give direction with respect to any legal matters for each of the Debtors (excluding Intermediate); and (iv) the Amended and Restated Limited Liability Company Agreement of Thrill Holdings LLC dated September 23, 2025.

73. As confirmed by a high definition video recording, on September 23, 2025, at 9:56 a.m., unambiguously shows a courier (acting as Senior Lenders' agent) entering Fiume Capital's office at 10801 West Charleston Boulevard, Suite 600, Las Vegas, Nevada 89135 and ***simultaneously*** tendering two (2) envelopes to a receptionist.

**G. <u>The Administrative Agent's Proxy Notice on September 23, 2025, Was Defective.</u>**

74. This concurrent delivery was intentionally effectuated on Rosh Hashanah.

75. One of the envelopes contained an ***executed*** letter directed to David Hirschfeld and is dated September 23, 2025, regarding "Notice of Exercise of Remedies" (the "<u>Notice of Exercise</u>"). The Notice of Exercise was executed by the Administrative Agent and stated in pertinent part that it "notified Thrill Intermediate LLC that the Administrative Agent intends to exercise (to the exclusion of Thrill Intermediate LLC) its voting power and all other incidental rights of ownership with respect to the Pledged Collateral pledged by Thrill Intermediate LLC."

76. The other envelope concurrently delivered contained three documents, ***each of which was executed by the Administrative Agent***: (i) a copy of the Notice of Exercise; (ii) a Written Consent of the Sole Member of Thrill Holdings LLC dated September 23, 2025, purportedly executed by Intermediate and Holdings by Alexandra Rhyne, the Vice President of U.S. Bank Trust Company, National Association "(acting as attorney-in-fact under the Pledge Agreement and by proxy)" (the "<u>Purported Written Consent</u>"); and (iii) the Amended and Restated Limited Liability Company Agreement of Thrill Holdings LLC purportedly executed by Intermediate and Holdings by Alexandra Rhyne, the Vice President of U.S. Bank Trust Company, National Association "(acting as attorney-in-fact under the Pledge and by proxy)" ("<u>Agent's ARA LLC</u>").

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

77. Even though the Senior Lenders failed to provide the required notice prior to the execution of the Purported Written Consent, the Purported Written Consent states in the third recital, that "Events of Default are continuing under the Credit Agreement and the Administrative Agent gave notice to the Sole Member and the Company on the date hereof that the Administrative Agent was exercising its rights and remedies under the Pledge Agreement."

78. The Notice of Election of Remedies was delivered to a receptionist Fiume Capital's office simultaneously with the Purported Written Consent and the Agent's ARA LLC.

79. The Purported Written Consent and Agent's ARA LLC were executed by the Administrative Agent prior to the time that they were delivered to a receptionist at Fiume Capital's office.

80. A recital of the Purported Written Consent further states that "on the date hereof, under and pursuant to the Credit Agreement and the Pledge, the Administrative Agent has…***exercised*** the proxy and power of attorney pertaining to the Equity Interests to exercise this written consent to, among other things (i) amend and restate the Company's limited liability company agreement, (ii) remove every existing member of the board of managers of the Company (the "Board", and each member thereof, a "Manager") and (iii) elect a new member of the Board, and written notice of the foregoing is being delivered to the Sole Member of the Company concurrently herewith." (Emphasis added.)

81. The Administrative Agent exercised its proxy rights by executing the Purported Written Consent and the Agent's ARA LLC ***before*** providing the Notice of Election of Remedies to Intermediate and Holdings.

82. Importantly, the Purported Written Consent and Agent's ARA LLC, both executed before the contractually required notice was provided, swept the Board of Managers, replacing them with a purported independent director, Steven Strom.

83. Section 7.5 of the Pledge does not permit required notices by email, only by properly addressed mail, postage prepaid, or prepaid courier services.

84. Nonetheless, at 11:17 a.m. (Pacific Time) on September 23, 2025, the



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Administrative Agent sent an email to David Hirschfeld and two attorneys for Intermediate and Holdings (Gregory Garman and Antonio Diaz-Albertini) attaching the Notice of Election of Remedies.

85. At 11:18 a.m. (Pacific Time) on September 23, 2025, the Administrative Agent sent an email to David Hirschfeld and two attorneys for Intermediate and Holdings (Gregory Garman and Antonio Diaz-Albertini) attaching the Notice of Election of Remedies, the Purported Written Consent, and the Agent's ARA LLC.

86. Even if required notice under the Pledge could be provided by email as stated in Section 10.1 of the Credit Agreement, ***it could not***, that section explicitly provides, "Notices sent by email shall be deemed to have been received upon receipt by the sender of confirmatory return e-mail or other written acknowledgement from the intended recipient (provided that the use of the "return receipt requested" function shall not be sufficient), provided that if such e-mail is not given during normal business hours of the recipient, such notice or other communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient."

87. David Hirschfeld did not provide written acknowledgement or otherwise accept either of the Administrative Agent's emails sent on September 23, 2025. Nor has he since provided such required acknowledgement.

88. Additionally, at 11:29 a.m. (Pacific Time) on September 23, 2025 (again, in the middle of Rosh Hashanah), Steven Strom sent an email to David Hirschfeld (the notice party), with a copy to Jeremy Rosenthal (the CRO) and Debtors' counsel, Messrs. Garman and Albertini, which attached the following written consents in lieu of a meeting:

a. Omnibus Written Equity Consent dated September 23, 2025, signed by Steven Strom as the "Authorized Signatory" for Holdings and Superjacket, which, among other resolutions, approved and adopted an amended limited liability company agreement for Rallycross; approved and adopted the existing operating agreements for Nitrocross IP, Superjacket, Perfect Feet, Crown, and Conduit; and precluded any officer, employee, or agent of these companies from taking action without the advanced written consent of

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Holdings' new Board of Managers consisting solely of Mr. Strom.

b. Omnibus Written Board Consent dated September 23, 2025, signed by Steven Strom as the sole member of the Board of Managers for Holdings and Purple Shark, which, among other resolutions, indemnified Mr. Strom; provided that Holdings and Purple Shark's director and officers' liability insurance policies shall provide coverage for Mr. Strom; resolved that the Administrative Agent and Senior Lenders are not responsible for any fees, compensation, liabilities, reimbursement, or indemnity of Mr. Strom (i.e., causing only Holdings and Purple Shark to bear that burden); precluded any officer, employee, or agent of these companies from taking action without the advanced written consent of Holdings' new Board of Managers consisting solely of Mr. Strom; and empowered Mr. Strom to act on behalf of Holdings and Purple Shark.

c. Written Consent of the Sole Member of Purple Shark, LLC dated September 23, 2025, signed by Steven Strom as the Authorized Signatory for Holdings, the sole member of Purple Shark, which, among other resolutions, amended and restated the operating agreement for Purple Shark; provided that Purple Shark's director and officers' liability insurance policies shall provide coverage for Mr. Strom; resolved that the Administrative Agent and Senior Lenders are not responsible for any fees, compensation, liabilities, reimbursement, or indemnity of Mr. Strom (i.e., causing only Purple Shark to bear that burden); precluded any officer, employee, or agent of these companies from taking action without the advanced written consent of Holdings' new Board of Managers consisting solely of Mr. Strom; and empowered Mr. Strom to act on behalf of Holdings and Purple Shark.

89. On information and belief, Mr. Strom also executed the foregoing Consents prior to the proxy notice even being delivered.

90. Because notice was not properly provided, either contractually or in accordance with Article 9 of the Uniform Commercial Code, Senior Lenders' actions and Mr. Strom's action on September 23, 2025, are void *ab initio*.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

**H. The Action by the Agent's Written Consent Concerning the Holdings Interests Was Ineffective as a Matter of Contract Under the Operative Loan Documents.**

91. The Pledge contractually conditions the Administrative Agent's right to exercise its voting power under Section 4.2 of the Credit Agreement on two precedent events. First, there must be an Event of Default that has occurred and is continuing. Second, the Administrative Agent must *have notified the applicable Pledgor of the Administrative Agent's intention* to exercise its voting power under Section 4.2 of the Credit Agreement.

92. As averred above, despite the parties' negotiated agreement to the contrary, the Administrative Agent exercised its voting rights prior to providing the contractually required notice to Plaintiffs as clearly demonstrated by the simultaneous delivery of the two envelopes on September 23, 2025, delivering the Notice of Exercise of Remedies at exactly the same time as the copy of the Notice of Exercise of Remedies, the previously executed Purported Written Consent and Agent's ARA LLC.

93. The Pledge did not permit the Administrative Agent or Senior Lenders to act for Intermediate under Section 4.2 by written consent.

94. As a result of the Administrative Agent's actions, taken at the direction of the Senior Lenders, in contravention of the Credit Agreement and/or the Pledge, Defendants improperly interfered with and/or sought to deprive Intermediate of its right to vote its interests or otherwise control Holdings.

95. The Administrative Agent and other Defendants improper actions sought to deprive Intermediate of its rights to manage and direct Holdings, and its direct and indirect subsidiaries in contravention of the Credit Agreement and/or the Pledge.

96. As a result of the Administrative Agent's actions, taken at the direction of the other Defendants, Plaintiffs were harmed by Defendants' attempt to cause of change in control of Holdings, Superjacket, Purple Shark, Crown, Conduit, and Perfect Feet.

**1. The Action By Written Consent Concerning the Holdings Interests Was Ineffective Under Statutory Law.**

97. The Pledge explicitly states that it creates a security interest in the Pledged



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Collateral, which includes Intermediate's equity interest in Holdings (the "Holdings Interests").

98. The Holdings Interests are the personal property of Intermediate.

99. Section 7.9 of the Pledge makes the internal law of New York controlling when construing and enforcing the Pledge.

100. The Pledge is a security agreement under the internal law of New York, and particularly New York's version of Article 9 of the Uniform Commercial Code.

101. Section 4.2 of the Pledge contains the proxy relied in part upon by Defendants to empower the action taken in the Written Consent.

102. Section 4.2 states that it is coupled with an interest, to wit a property interest.

103. Section 4.2 would not be incorporated into the transaction, or the Pledge but for the purpose of, as relevant to this Complaint, providing Defendants with mechanism to cut off and dispossess Intermediate from its voting rights associated with the Holdings Interests and associated rights to direct, manage, and control Holdings.

104. The mechanism in Section 4.2 of the Pledge to cutoff and dispossess Intermediate from its voting rights, which is tantamount to a foreclosure of Intermediate's voting rights, subject to a redemption.

105. The provision of a proper notice as required under Section 4.2 of the Pledge serves as a "notice of disposition" under Section 9-611 of the New York Uniform Commercial Code.

106. A notice required under Section 9-611 of the New York Uniform Commercial Code cannot be waived or be deemed waived as provided in Section 9—602(g) of the New York Uniform Commercial Code.

107. In any event, parties to an agreement covered by Article 9 of the New York Uniform Commercial Code cannot agree to a process for determining whether a secured party complies with a secured party's obligations under a rule set forth in Section 9-602 of the New York Uniform Commercial Code if that standard is manifestly unreasonable.

108. The express language of Section 4.2 the Pledge requires a specific notice of intention before action, and any other interpretation of the parties' pre-default agreement would



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

have been an agreement that is manifestly unreasonable and proscribed by Section 9-603 of the New York Uniform Commercial Code.

109. As averred above, the Administrative Agent exercised Intermediate's voting rights prior to providing statutory required notice as clearly demonstrated by the simultaneous delivery of the Notice of Election of Remedies and the Purported Written Consent and the Agent's ARA LLC, which had previously been executed by the Administrative Agent.

110. As a result of the Administrative Agent's actions, taken at the direction of the other Defendants, Defendants, in contravention of the Credit Agreement, interfered with and/or attempted to deprive Intermediate of its right to vote its interests or otherwise control Holdings.

111. As a result of the Administrative Agent's actions, taken at the direction of the other Defendants, Intermediate's rights to manage and direct Holdings, and its direct and indirect subsidiaries was impaired in contravention of the Credit Agreement and/or the Pledge.

**J. <u>The Action By Written Consent Concerning the Holdings Interests Was a Violation of Public Policy.</u>**

112. The Bankruptcy Code's text and structure do not permit private parties to contract out of core bankruptcy access or protections.

113. The Ninth Circuit has explicitly held that prepetition waivers of bankruptcy protections are void as against public policy.

114. The Administrative Agent, at the direction of the Senior Lenders, exercised the proxy in the Pledge to "flip" the pledgors' managers without reasonable notice to the pledgors.

115. If timing the delivery of the Notice of Exercise of Remedies and the copy of the Notice of Exercise of Remedies, Purported Written Consent, and Agent's ARA LLC was consistent with the Credit Documents and Article 9 (it was not), public policy prohibits Senior Lenders' action as it constituted an impermissible waiver of bankruptcy protections it is void as against public policy.

**K. <u>Alternatively, If the Proxy Is Not Governed By the Uniform Commercial Code, It Is Nothing More than a Contractual Obligation.</u>**

116. If required contractual notice and/or proper notice was given under Article 9 of



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

New York's Uniform Commercial Code or Article 9 of New York's Uniform Commercial Code's notice requirements as alleged herein do not apply under Section 4.2 of the Pledge, then the post-petition action taken by Defendants in reference to the purported Written Consent is nothing more than a breach of contract by Defendants.

**L. <u>The Actions Taken By Defendants Breached the Implied Covenant of Good Faith and Fair Dealing.</u>**

117. Under the common law, every contract imposes upon each party a duty of good faith and fair dealing in its performance.

118. New York law, the UCC, and the Restatement of Contracts are in accord, the covenant of good faith and fair dealing is embodied in every contract and prevents unjustified actions that deny a counterparty's reasonable expectation:

119. The New York Court of Appeals recently wrote this summary:

> This implied covenant "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract". . . "Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion" . . . This Court has consistently observed that the covenant requires the parties to perform under the contract "in a reasonable way" . . . In discerning what is "reasonable," the Court looks to what the parties would have expected under the contract: the Court will infer that contracts "include any promises which a reasonable person in the position of the promisee would be justified in understanding were included" at the time the contract was made . . . ."

*Cordero v. Transamerica Annuity Serv. Corp.*, 39 N.Y.3d 399, 409–10, 211 N.E.3d 663, 670 (2023). *See also Singh v. City of New York*, 189 A.D.3d 1697, 139 N.Y.S.3d 307 (2020).

120. The New York Uniform Commercial Code also imposes such a duty, Section 1-304 states that "[e]very contract or duty within [the Uniform Commercial Code] imposes an obligation of good faith in its performance and enforcement."

121. The New York Uniform Commercial Code, in turn, defines good faith by stating that "good faith" means: "honesty in fact in the transaction or conduct concerned."

122. Comment D to Section 205 of the Restatement (Second) of Contracts explains that:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

> than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

123. The covenants of good faith and fair dealing are properly used to evaluate whether the Senior Lenders provided sufficient notice before purporting to exercise their proxy and that issue necessarily turns on Debtors' justified expectations.

124. Under New York law, the "adequacy of notice is one of reasonableness in view of all attendant circumstances." *Hughes v. Lenox Hill Hosp.*, 651 N.Y.S.2d 418, 427 (1996). "The Court should look at whether a party's good faith effort to comply with the notice requirement was sufficient to serve the general purpose of that particular notice provision under the circumstances."

125. An exercise of the proxy under Section 4.2 of the Pledge is extraordinary and empowers the Senior Lenders to control every aspect of the Debtors, including the ability to dispose of all Debtors' property, and unilaterally deny Debtors the right to bring an action or maintain a bankruptcy, and Implying a reasonable notice period is not inconsistent with either Credit Agreement, the Pledge, or the UCC, and is in fact necessary to avoid destroying or injuring Debtors' rights.

126. Debtors maintain that they had a justified expectation that Notice was to afford Debtors the right and ability to take action, including seeking relief from a Court, filing for bankruptcy, curing a default, or paying the obligation in full.

127. Defendants' conduct in the timing the delivery of the Notice of Exercise of Remedies and the copy of the Notice of Exercise of Remedies, Purported Written Consent, and Agent's ARA LLC to Mr. Hirschfeld in the middle of Rosh Hashanaha, particularly in view of the lengthy period of time that had elapsed since the delivery of July 3 Reservation Letter and despite discussions just prior to September 23, 2025, that Plaintiffs ultimate equity owner had formulated a settlement proposal that Plaintiffs would be delivering to the Administrative Agent, manifests Defendants' intention to: (i) nullify or render the notice provision Pledge superfluous, (ii) prevent Intermediate and certain other Plaintiffs from exercising its voting rights, (iii) interfere with and/or

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

deprived Plaintiffs of its right to vote its interests or otherwise control Holdings, and (iv) deprive Intermediate of its rights to manage and direct Holdings, and its direct and indirect subsidiaries; all prior to Plaintiffs being provided with the contractual and statutory notice required by Section 4.2 of the Pledge.

128. The Defendants' so intended actions violated the covenants of good faith and fair dealing and rendered the exercise of their proxy invalid.

129. In view of the time elapsed between the delivery of the July 3, 2025 Reservation Letter and September 23, 2025 (82 days), the fact that Rosh Hashanaha began on Monday, September 22, 2025 and ended on Wednesday, September 24, 2025, and Plaintiffs' counsel's communications with the Administrative Agent's counsel just prior to September 23, 2025, that they had formulated a settlement proposal that they were delivering to the Administrative Agent, combined with the timing of delivery of the delivery of the Notice of Exercise of Remedies and the copy of the Notice of Exercise of Remedies, Purported Written Consent, and Agent's ARA LLC, is not consistent with the justified understanding of Plaintiffs, particularly where the Written Consent, if valid, had the effect of preventing Plaintiffs from curing the defaults alleged by the Administrative Agent.

**M. <u>The Holdings Interests Are Property of the Estate and Protected By Section 362(a)'s Automatic Stay.</u>**

130. Section 541(a)(1) of the Bankruptcy Code provides that, upon the petition date, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including membership and governance rights in a wholly owned subsidiary.

131. Intermediate held 100% of the equity interest in Holdings immediately prior to the petition date (i.e. the Holdings Interests).

132. The operative loan documents confirm that Intermediate granted only a security interest in those equity interests—not an absolute transfer. Article II of the Pledge expressly states it "creates a continuing security interest" in the "Pledged Equity," which includes the pledgor's equity interests and related voting and economic rights, and it does so solely "as security for" the



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

loan obligations.

133. The Credit Agreement likewise identifies the Pledge as a "Collateral Document" securing the debt, not conveying ownership.

134. Because the Pledge did not divest Intermediate of title, the Holdings Interests became estate property upon Intermediate filing its petition. *See* 11 U.S.C. § 541(a)(1).

135. Section 362(a) of the Bankruptcy Code stays any act to obtain possession of, or exercise control over, the Holdings Interests.

136. The Bankruptcy Code's automatic stay bars, *inter alia*, "any act to obtain possession of property of the estate or … to exercise control over property of the estate," as well as "any act to … enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3), (4), (6).

137. A secured party's post-default efforts to take or to exercise voting control over pledged equity are stayed because those efforts are acts to "exercise control" over an equity interest that is squarely within Section 541.

138. Here, the only rights the Defendants hold in the Holdings Interests arise from their collateral package—a lien and a conditional proxy embedded in the Pledge, which rights cannot be exercised post-petition without relief from the stay.

139. The Pledge confirms the lender holds a lien and a conditional proxy—neither of which extinguishes Intermediate's ownership.

140. Article II of the Pledge "grants … a continuing security interest" in the "Pledged Equity," together with distributions and proceeds, to "secure" the loan obligations, and provides for termination and return upon payment. That is the hallmark of a lien, not an absolute conveyance.

141. Section 4.2 of the Pledge allows the Administrative Agent to exercise voting power only if (i) an "Event of Default" "has occurred and is continuing," and (ii) the Agent has notified the pledgor of its "intention to exercise" such voting power. Until both conditions are met, "the Pledgors shall have the exclusive voting power with respect to the Pledged Collateral." These terms confirm that (1) Intermediate remained the owner; (2) any voting proxy was contingent and

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

revocable upon satisfaction of debt; and (3) the Administrative Agent's remedy is an exercise of control over the debtor's equity interest—conduct squarely stayed by Section 362(a)(3).

142. Any purported prepetition "exercise of proxy" failed to divest estate ownership; any postpetition exercise is void for violating Section 362.

143. As averred above, the Notice of Election of Remedies was delivered to a receptionist in Fiume Capital's office on September 23, 2025, by the Administrative Agent simultaneously with the Purported Written Consent and the Agent's ARA LLC. This sequence does not satisfy the Pledge's express condition precedent requiring prior notice of an intent to exercise voting power. Even apart from those contractual defects, to the extent any further acts to implement or continue that proxy took place after the petition date, they are stayed by Section 362(a)(3), (a)(4), and (a)(6) of the Bankruptcy Code and are therefore void and should be unwound.

144. The Chapter 11 Cases were filed to protect against the Senior Lenders' attempted hostile takeover which threatened the Debtors' viability, to preserve Debtors' operations and value, to seek to maximize the value of the Debtors' assets, and to ensure Debtors were ready, able, and willing to perform under their contracts.

145. Importantly, at no time did Senior Lenders have any proxy rights with respect to Thrill Partners LLC, which is the sole member of Intermediate, or Intermediate (as Thrill Partners LLC never exercised a proxy for its equity interests in Intermediate). Thus, there can be no dispute whatsoever that Thrill Partners LLC had the requisite limited liability company authority to cause Intermediate to file Chapter 11 or that once Intermediate filed Chapter 11, Intermediate's 100% membership interest in Holdings became property of Intermediate's estate. The same is likewise true for each of the remaining subsidiaries (i.e., the other Debtors).

**N. <u>The Commencement of the Chapter 11 Cases.</u>**

146. Notwithstanding the grave consequences that could result from the Defendants' actions, and despite the discussion of a forthcoming settlement offer, the Defendants undertook their scheme to effectuate a hostile takeover of the Debtors, in the middle of Rosh Hashanah, which scheme was designed to deny Debtors their contractual and statutory notice rights.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

147. Having learned of the Defendants' improper conduct threatening Debtors' viability, Debtors analyzed the Defendants' actions and concluded that the Defendants' actions were void.

148. Due to the Defendants' malfeasance, Thrill Partners LLC's board of managers met on September 28, 2025, and voted to file Intermediate into Chapter 11 bankruptcy.

149. Defendants had not taken any actions to wrest control over Intermediate, nor could they.

150. Defendants do not hold a security interest in the equity interests of Intermediate.

151. Upon the filing of Intermediate's voluntary Chapter 11 petition, regardless of the validity (or lack thereof) of any actions taken by the Defendants, all of the voting interests in Intermediate's subsidiary entities became property of Intermediate's bankruptcy estate.

152. The requisite Debtors then held a series of governance meetings on September 28, 2025, authorizing the remaining Debtors' bankruptcy filings, which are reflected in the corporate resolutions filed with the bankruptcy petitions.

153. Having obtained all of the required approvals and consents, late in the evening on September 28, 2025, and proceeding into the early hours of September 29, 2025, each of the Debtors filed their Chapter 11 petitions.

154. On September 29, 2025, Intermediate commenced this action against Defendants to address their malfeasance.

## V.
## FIRST CLAIM FOR RELIEF
**(Declaratory Judgment)**

155. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

156. Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Bankruptcy courts, as units of the district court, have the authority to issue declaratory judgments.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

157. Courts possess jurisdiction to issue declaratory relief where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007).

158. The Credit Agreement, Security Agreement, and Pledge are contracts between Plaintiffs and Defendants pursuant to which the Court can declare the parties' rights and legal relations.

159. There is a substantial controversy between Plaintiffs and the Administrative Agent and the other Defendants of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, which is both necessary and appropriate.

160. Plaintiffs seek a declaratory judgment declaring the Parties' rights under the Credit Agreement, Security Agreement and Pledge, and specifically with respect to the notice, proxy and foreclosure obligations arising thereunder. This includes a declaration regarding the means and manner in which Notice must be given and whether Defendants' purported exercise of the Proxy prior to Notice was commercially unreasonable and in violation of New York's Uniform Commercial Code.

161. Plaintiffs further seek a determination that the equity interests pledged, and the attendant rights thereto are property of the estate under Section 541.

162. With respect to those declarations, Plaintiffs seek a declaration confirming that (1) the Administrative Agent's purported exercise of remedies detailed herein above under the Pledge and Credit Agreement in respect to the Holdings Interests are null and void; and (2) that Section 4.2 of the Pledge is subject to the New York Uniform Commercial Code and that Defendants' action prior to providing notice is manifestly unreasonable and proscribed by Section 9-603 of the New York Uniform Commercial Code.

163. Plaintiffs also seek a determination that the Holdings Interests and equity interests of each of Holdings' direct and indirect subsidiaries are property of the estate under Section 541.

164. Plaintiffs further seek any other remedy determined by the Court to be just and

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

necessary, including an injunction that prevents Defendants from acting inconsistently with the declaration.

## VI.
## SECOND CLAIM FOR RELIEF
## (Enforcement of 11 U.S.C. § 362(a)'s Automatic Stay)

165. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

166. Section 541(a)(1) of the Bankruptcy Code provides that, upon the petition date, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," including membership and governance rights in a wholly owned subsidiary.

167. As averred above, the Holdings Interests are property of Intermediate's bankruptcy estate.

168. As established by the Article II of the Pledge and the Credit Agreement, Holdings granted only a security interest in the Holdings Interests—not an absolute transfer. Because the Pledge did not divest Intermediate of title, the Holdings Interests and each of its direct and indirect subsidiaries' interests became estate property upon Intermediate filing its petition. *See* 11 U.S.C. § 541(a)(1).

169. Section 362(a) of the Bankruptcy Code stays any act to obtain possession of, or exercise control over, the Holdings Interests. The automatic stay bars, inter alia, "any act to obtain possession of property of the estate or … to exercise control over property of the estate," as well as "any act to … enforce any lien against property of the estate." 11 U.S.C. § 362(a)(3), (4), (6).

170. A secured party's post-default efforts to take or to exercise voting control over pledged equity are stayed because those efforts are acts to "exercise control" over an equity interest that is squarely within Section 541.

171. Section 4.2 of the Pledge allows the Administrative Agent to exercise voting power only if (i) an "Event of Default" "has occurred and is continuing," and (ii) the Agent has notified the pledgor of its "intention to exercise" such voting power. Until both conditions are met, "the

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

Pledgors shall have the exclusive voting power with respect to the Pledged Collateral." These terms confirm that (1) Intermediate remained the owner; (2) any voting proxy was contingent and revocable upon satisfaction of debt; and (3) the Administrative Agent's remedy is an exercise of control over the debtor's equity interest—conduct squarely stayed by Section 362(a)(3).

172. Any purported prepetition "exercise of proxy" failed to divest estate ownership; any postpetition exercise is void for violating Section 362.

173. Any acts to exert control over the Holdings Interest (or any of the Debtors' assets) after the petition date are stayed by Section 362(a)(3), (a)(4), and (a)(6) and are therefore void and must be unwound.

174. The Administrative Agent's continued attempt to exercise control over the Holdings Interests, which are part of the Debtors' estate, violates the automatic stay.

175. Because (i) Intermediate's 100% Holdings Interests are property of the estate under § 541; (ii) the Pledge conferred only a lien and a conditional proxy that does not change ownership; and (iii) any effort by the Administrative Agent or Senior Lenders to vote, replace managers, amend governance documents, or otherwise control Holdings or its subsidiaries is an act to "exercise control" over estate property and to enforce a lien, Plaintiffs seek an Order from the Court) (i) confirming that the Holdings Interests (and the interests of Holdings' subsidiaries) are property of the estate; (ii) enforcing Section 362(a) to prohibit any act to obtain possession of or exercise control over those interests, including any exercise of the proxy or governance changes; (iii) declaring any postpetition acts purporting to exercise proxy or governance control void and order appropriate unwinding of any such actions; and (iv) award such further relief as is necessary to restore the status quo and protect the Debtors' estates.

176. Plaintiffs further seek an Order from the Court holding the Administrative Agent (and the other defendants acting in concert with the Administrative Agent) in contempt for violating the statutory injunction of Section 362(a) and fixing damages and punitive damages in an amount determined upon proof at trial.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## VII.
## THIRD CLAIM FOR RELIEF
## (Breach of Contract)

177. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

178. Plaintiffs entered into the Credit Agreement and certain of the Credit Documents with Defendants, including the Security Agreement and Pledge that are binding and enforceable agreements against Defendants.

179. Plaintiffs performed under the agreements or were otherwise excused from performance.

180. Each of the Agreements provide clear and unambiguous notice provisions that were specifically negotiated and material terms of the parties' transaction. Notice was material, for among other reasons, to give Plaintiffs notice of an intended action to provide the opportunity to cure or reach a resolution with Defendants.

181. Defendants breached the Credit Agreement and Security Agreement when they failed to provide proper notice before purporting to take corporate action on behalf of certain Debtors.

182. Defendants' actions were specifically taken to deprive Intermediate and the other Plaintiffs of their right to operate Debtors and to otherwise coerce or cause Plaintiffs harm. By secretly taking action—that is to intentionally take action **before** providing the required notice during a religious holiday—Defendants' intent was to deny Plaintiffs any opportunity to cure or otherwise prevent Plaintiffs from exercising their right to file bankruptcy.

183. Illustrating Defendants' egregious intent, before giving a scintilla of notice, Defendants attempted to terminate Holdings' board and instill a new operating agreement that purported, among other things, to deprive Holdings of the constitutional right to seek reorganization under the Bankruptcy Code.

184. As set forth above, without providing the required notice, Defendants undertook the same conduct with respect to the remaining Debtors.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

185. In other words, Defendants intentionally acted to neuter and obviate the purpose of the notice provisions of the Credit Agreement and Pledge.

186. The Defendants' conduct described herein, including the exercise of remedies under the Pledge, constitutes a breach of the Credit Agreement and other Loan documents.

187. As a result of the Defendants' breaches of the Credit Agreement and related Loan documents, Plaintiffs have suffered damages for which they are entitled to recover in an amount subject to proof at trial.

188. Plaintiffs further seek any other relief deemed equitable or necessary by the Court.

## VIII.
## FOURTH CLAIM FOR RELIEF
## (Breach of Covenants of Good Faith and Fair Dealing)

189. Plaintiffs re-allege and incorporate by reference the allegations set forth in all preceding paragraphs of this Complaint as though set forth fully herein.

190. The Credit Agreement are valid and enforceable agreements. Every contract under the relevant state's laws contain covenants of good faith and fair dealing which prevent a party from acting in a way that deprives the other parties of their justified expectations under the contract, even when those actions do not technically contravene the terms of the contract.

191. The Credit Agreement contain express and unambiguous notice provisions. The notice provisions were material and expressly negotiated to provide Plaintiffs with the opportunity, should it become necessary, to address any alleged breach and Defendants intent to exercise a remedy. These provisions, coupled with rights to cure and other rights afforded by law, are embodiments of the parties' expectations. But for the inclusion of the provisions, Plaintiffs would not have entered into the Credit Agreement.

192. Knowing Section 7.5 of the Pledge barred email notice and that Section 10.01 of the Credit Agreement required acknowledgment for any email to be effective, the Agent timed courier and email deliveries for the middle of Rosh Hashanah, when the specifically designated notice recipient, Mr. Hirschfeld, would not acknowledge receipt, and while Plaintiffs were preparing a settlement proposal the Agent knew about. This calculated timing to manufacture



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

"notice" and immediately claim voting power was arbitrary, self-serving, and designed to deprive Plaintiffs of the contract's fruits (continued voting control absent satisfied conditions), thereby breaching the covenant of good faith and fair dealing.

193. The Administrative Agent pre-executed the Written Consent and A&R LLC Agreement and delivered them simultaneously with the purported notice of intent, effectively treating the notice condition as a nullity. Using a discretionary remedy in a manner that evades express notice conditions is, at minimum, unreasonable and frustrates Plaintiffs' justified expectations under the Credit Documents.

194. Defendants acted to evade the notice requirements, for amongst other reasons, to deny Plaintiffs of their justified expectations, including its right to cure any alleged default and to prevent Debtors from seeking protection under the United States Bankruptcy Code. Defendants' intent in this regard is obvious from the timing of its actions, on a holiday where Plaintiffs practically could not address the action and on the cusp of Plaintiffs making a proposal to Defendants. Defendants then secretly acted to reconstitute the board of directors and amend the Debtors' governing documents, to furth deny Plaintiffs the contractual right to cure or otherwise address the alleged default. This was again done with the express intent to deprive Plaintiffs of its justified expectations and rights under the Credit Agreement

195. As a direct and foreseeable consequence, Plaintiffs' (i) ability to exercise voting rights and managerial control over Holdings was impaired; (ii) practical ability to present and implement a cure was impaired; and (iii) incurred disruption and expense in addressing the Agent's defective actions.

196. The Administrative Agent's and the other Defendants' conduct described herein, including its exercise of remedies under the Pledge, constitutes a breach of the covenants of good faith and fair dealing.

197. As a result of the Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs have suffered substantial damages for which they are entitled to recover in an amount that will be subject to proof at trial.

Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

198. Plaintiffs further seek any other relief deemed equitable or necessary by the Court.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief as follows:

1. For a declaration of rights that:

i. The Defendants' purported exercise of remedies detailed herein above under the Pledge and Credit Agreement in respect to the Holdings Interests (and Holdings' subsidiary interests) are null and void;

ii. That Section 4.2 of the Pledge is subject to the New York Uniform Commercial Code and that Defendants' action prior to providing notice is manifestly unreasonable and proscribed by Section 9-603 of the New York Uniform Commercial Code;

iii. That the Holdings Interests are property of Intermediate's bankruptcy estate; and

iv. That this Court, pursuant to section 362 of the Bankruptcy Code, issue an order enforcing the automatic stay as to the Defendants' attempts to exercise control of the Holdings' Interests, inclusive of its direct and indirect subsidiaries' interests.

2. That this Court, to the extent it determines that the automatic stay does not apply, exercise its broad discretionary powers under section 105 of the Bankruptcy Code and preliminary and permanently enjoin the Administrative Agent and the other Defendants from exercising remedies to exercise control of the Holding's Interests.

3. For an award to Plaintiffs of damages for the harm they have suffered as a consequence of Defendants' violation of the statutory injunction of Section 362(a).

4. For an award to Plaintiffs of damages for the harm they have suffered as a result of the Defendants' breach of contract in an amount to be determined.

5. For an award to Plaintiffs of damages for the harm they have suffered as a result of the Defendants' breach of the covenants of good faith and fair dealing of contract in an amount to be determined.

6. For and award of punitive damages.



Garman Turner Gordon
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

7. For an award of attorney's fees and costs.

8. For such further relief the Court finds just and proper.

Dated this 20th day of January 2026.

GARMAN TURNER GORDON LLP

By: */s/ William Noall*
GREGORY E. GARMAN, ESQ.
WILLIAM M. NOALL, ESQ.
TERESA M. PILATOWICZ, ESQ.
DYLAN T. CICILIANO, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119

*Counsel for Plaintiffs*